# DOWNS *v.* BANKHEAD.

CONTRACTS; PAROL TESTIMONY; PRINCIPAL AND AGENT.

1. Where a written contract is ambiguous from the nature of its execution, parol testimony is admissible to ascertain the intent of the parties.

2. In determining whether an agent is personally liable on a contract entered into by him in behalf of his principal, the court will look to the intent of the parties rather than to the phraseology of the contract or the mere form of its execution.

3. Where a written contract for the reservation in a hotel of several hundred rooms for a political marching club was executed by the proprietor of the hotel and signed as accepted by the agent of the club, and at the time the contract was made the agent paid $3,000 on account in advance and disclaimed any personal liability under the contract, notifying the hotel proprietor that he must look to the club for the balance when due, and the language of the contract was such as to indicate that the hotel proprietor must have so understood it, the trial court, in an action by the hotel proprietor against the agent for such balance, properly directs a verdict for the defendant.

No. 2798.  Submitted October 8, 1915.  Decided November 1, 1915.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia on a verdict directed by the court in an action upon a written contract.
*Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment of the supreme court of the District of Columbia entered upon a directed verdict in favor of appellee, John H. Bankhead, hereafter referred to as defendant, and against the appellant, Robert S. Downs, plaintiff below.  The action was based upon the following contract:

St. James Hotel.
Charles and Center Sts.
Baltimore, Md.

June 6, 1912.

The St. James Hotel hereby agrees to reserve for the use of the Oscar W. Underwood Marching Club rooms with sleeping accommodations for four hundred persons in the St. James Hotel and Annex, Baltimore, Md., from the 24th day of June, 1912, to the 29th day of June, 1912, and the said Oscar W. Underwood Marching Club agrees to take and pay for the said rooms for such period of time at the rate of $1,200 per day, payable one half upon the signing of this agreement, and the balance before said rooms are occupied, and in any event not later than the 25th day of June, 1912, otherwise said St. James Hotel to have the right to let the said rooms to other parties without any liability to the said Oscar W. Underwood Marching Club, their payment on account thereof being considered liquidated damages for the breach of said agreement.

It is further agreed that if the said Oscar W. Underwood Marching Club shall occupy said rooms prior to the 24th day of June, 1912, or after the 29th day of June, 1912, said occupancy shall be subject to the above terms and conditions.

Executed this 6th day of June, 1912.

The St. James Hotel,
R. S. Downs, Lessee.
Accepted, J. H. Bankhead.

Witnesses:
Frank O'Brien.
H. J. Finch.

It appears that defendant, a United States Senator, was chairman of the Oscar W. Underwood Campaign Committee, organized to assist in securing the nomination of Honorable Oscar W. Underwood as the presidential candidate at the Democratic National Convention at Baltimore, Maryland, in 1912. At the solicitation of one Oscar C. Turner, president of the Underwood Marching Club, defendant agreed to advance $3,000

out of the campaign fund of the committee toward paying the expenses of the marching club in Baltimore, it being agreed that so much of the $3,000 as might be collected from members of the club over and above the balance necessary to meet the hotel expenses should be refunded to defendant and returned by him to the Underwood compaign fund. Turner, as chairman of the marching club, entered into a contract with one Frank C. O'Brien, of Baltimore, whereby accommodations for four hundred members of the marching club were arranged at the Eutaw House, for which a total of $6,000 was to be paid. The contract was signed between O'Brien and Turner, and defendant advanced the $3,000 out of the compaign fund of the committee. Before the date for the convening of the Convention, the Eutaw House was partially destroyed by fire and rendered uninhabitable, and defendant, at the request of the officers of the club, entered into the above contract with plaintiff Downs, thereby securing accommodations for the members of the club at the St. James Hotel. It appears that O'Brien introduced Downs to defendant, was present when the above agreement was made, and paid over to Downs the $3,000 which he had received from defendant on account, it being agreed between Downs and defendant that any excess collected from the club over that specified in the contract should be paid to defendant to reimburse the campaign committee. The case in the court below turned upon the question of the liability of the defendant, he contending that the contract was the contract of the Underwood Marching Club, and that he was not liable thereunder. The court, taking this view of the case, ordered a verdict in his favor, from which plaintiff prosecuted this appeal.

*Mr. Daniel W. Baker* and *Mr. William E. Leahy,* for the appellant, in their brief cited:

Clarke & S. Agency (1905) ¶¶ 25, 91; 31 Cyc. 1548; Mechem, Agency (1914) ¶¶ 1389, 1390; 2 Kent, Com. 2d ed. 620; Story, Agency, ¶¶ 280–290; *Anderson* v. *Staples,*

80 Mo. App. 115, 123; *Bank* v. *Dix,* 123 Mass. 148; *Blakely* v. *Bennecke,* 59 Mo. 193; *Booth* v. *Wonderly,* 36 N. J. L. 250–255; *Burton* v. *Furn. Co.* 10 Tex. Civ. App. 270; *Clarke* v. *O'Rourke,* 111 Mich. 109; *Comfort* v. *Graham,* 87 Iowa, 295–298; *Codding* v. *Munson,* 52 Neb. 271; *Clark* v. *Rawson,* 2 Denio, 135; *Eding* v. *Brown,* 1 Rich. S. C. 255; *Eichbaum* v. *Irons,* 6 Watts & S. 67; *Elwell* v. *Tatum,* 6 Tex. App. Civ. Cas. (Willson) 397; *Fay & Co.* v. *Richmond,* 18 Mo. App. 355, 362; *Foster* v. *Persch,* 68 N. Y. 400; *Fredendall* v. *Taylor,* 23 Wis. 538; *Fredendall* v. *Taylor,* 26 Wis. 286; *Heath* v. *Goslin,* 80 Mo. 310; *Kellner* v. *Baxter,* L. R. 2 C. P. 173; *Kendall* v. *Walker,* 7 Me. 171; *Kierstead* v. *Bennett,* 93 Me. 328, 332; *Lawlor* v. *Murphy,* 55 Conn. 295–312; *Lewis* v. *Tilton,* 64 Iowa, 220; *Learn* v. *Upstill,* 52 Neb. 271; *Lumber Co.* v. *Church,* 6 S. D. 499–502; *Perkins* v. *Goodman,* 21 Barb. 218; *Reding* v. *Anderson,* 72 Iowa, 498; *Robinson* v. *Robinson,* 10 Me. 240; *Staples* v. *Wheeler,* 38 Me. 372; *Steele* v. *McElroy,* 1 Snead, 341; *Steamship Co.* v. *Harbison,* 16 Fed. 688; *Stone* v. *Wood,* 7 Cow. 452; *Summerhill* v. *Wilkes* (1910) 133 S. W. 492; *Sullivan* v. *Reinlander,* 2 Hall (N. Y.) 295; *Tippetts* v. *Walker,* 4 Mass. 595; *Timkin* v. *Tallmadge,* 54 N. J. L. 117.

*Mr. Benjamin Carter* and *Mr. F. Carter Pope,* for the appellee, in their brief cited:

*Whitney* v. *Wyman,* 101 U. S. 392; *Heath* v. *Goslin,* 80 Mo. 310; *Codding* v. *Munson,* 52 Neb. 580; *Learn* v. *Upstill,* 52 Neb. 271; *Newman* v. *Sylvester,* 42 Ind. 106; *McCurdy* v. *Rogers,* 21 Wis. 199; *Fredendall* v. *Taylor,* 23 Wis. 538; *Blakely* v. *Bennecke,* 59 Mo. 193; *Ogden* v. *Raymond,* 22 Conn. 379; *Groeltz* v. *Armstrong,* 125 Iowa, 39–41; *Kroeger* v. *Pitcairn,* 101 Pa. 311; *Humphrey* v. *Jones,* 71 Mo. 62; *Perry* v. *Hyde,* 10 Conn. 329; *Abeles* v. *Cochran,* 22 Kan. 405; *Newport* v. *Smith,* 61 Minn. 277; *Ware* v. *Morgan,* 67 Ala. 461, 468; *Senter* v. *Monroe,* 77 Cal. 347.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The contract on its face is the contract of the marching club. Being ambiguous from the nature of its execution, it was proper to admit parol testimony to ascertain the intent of the parties. That defendant acted as the agent of the marching club in making the contract is conceded. It is therefore contended by plaintiff that since defendant represented an organization incapable of being sued, he is personally liable. The rule of agency is well established that where an agent personally enters into a contract with a third party who is ignorant of the existence of the agency, or where the agent falsely contracts as agent where no agency exists, or where one represents himself as agent for a principal who does not exist, or who is not responsible in law, the agent binds himself. But this rule is not without exception, and, in determining the application of the rule, the court will look to the intent of the parties, rather than to the phraseology of the contract or the mere form of its execution. As was said in *Whitney* v. *Wyman,* 101 U. S. 392, 25 L. ed. 1050: "If the contract be unsealed and the meaning clear, it matters not how it is phrased, nor how it is signed, whether by the agent for the principal, or with the name of the principal by the agent, or otherwise. The intent developed is alone material, and when that is ascertained it is conclusive. Where the principal is disclosed, and the agent is known to be acting as such, the latter cannot be made personally liable unless he agreed to be so."

The present case, we think, is well within the exception to the rule imposing liability upon the agent. Not only was the name of the principal disclosed upon the face of the contract, but the undisputed testimony of the defendant is that when the present contract was made and the $3,000 advanced by defendant was paid over by O'Brien to plaintiff, defendant said: "I am turning this $3,000 over to you, but I am not responsible for anything more in this transaction. That is the end of the responsibility. You can look to the club for the

balance." Nowhere in the record is this statement denied. We have, therefore, a case where the principal was not only disclosed, but where the agent, at the time the contract was made, disclaimed any liability or responsibility under it, notifying plaintiff that he must look to the marching club for the balance. That plaintiff so understood it is evidenced by the reservation in the contract of the right to sublet the rooms; by the agreement to pay back to defendant any amount collected in excess of the amount stipulated in the contract to reimburse defendant for the amount advanced out of the campaign fund, and from the fact that he subsequently collected $1,200 from the treasurer of the marching club.

Plaintiff was charged with constructive notice of the legal infirmities of the marching club; yet with this knowledge of the nature of the organization and the disclaimer of further responsibility on the part of defendant, plaintiff penned the contract himself, in which he contracted with the marching club and undertook to collect from the club the balance due him under the contract. In view of these facts, the law is one way. It is well expressed in the Cyclopedia of Law & Procedure, vol. 31, 1549, as follows: "If, therefore, the agent fully discloses to the third person the facts concerning his authority, so that the latter may have the same opportunity of judging of the sufficiency thereof as the agent himself, or if the third person himself has actual or presumptive knowledge of those facts, the agent cannot be held personally liable, even though the principal be not bound." This rule is supported by abundant authority, both English and American.

The judgment is affirmed, with costs.          *Affirmed.*

Mr. Chief Justice SHEPARD took no part in the consideration or decision of this case.